

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MRM/APW/KCM                 *610 Federal Plaza*
F. #2020R00784              *Central Islip, New York 11722*

December 30, 2025

By ECF

The Honorable Joan M. Azrack
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11201

          Re:     United States v. Akeem Chambers, et al.
                  Criminal Docket No. 23-157 (S-3) (JMA)

Dear Judge Azrack:

          Trial in the above-referenced case is scheduled to begin on January 20, 2026.  In this letter, the government respectfully moves in limine to request that the Court permit the government to (1) cross examine defendant Jerell Shaw with evidence of a prior conviction pursuant to Federal Rule of Evidence ("FRE") 609; and (2) introduce evidence of prior/pretrial incarceration of each defendant.  The government further requests that the Court preclude the defendants from introducing evidence at trial regarding (1) false exculpatory statements made by the defendant Jonathan Vazquez; and (2) any punishment or adverse consequences the defendants may face upon conviction.

          The government will file a supplemental motion in limine seeking to preclude the defendants from cross-examining law enforcement witnesses on irrelevant allegations of misconduct that do not bear on the witnesses' credibility.

   I.     Background

          On November 7, 2024, a federal grand jury in the Eastern District of New York, returned an indictment charging the defendants with an assortment of crimes related to their participation in the affairs of the Crips enterprise.  Akeem Chambers ("Chambers") is charged with, inter alia,  racketeering, in violation of 18 U.S.C. § 1962(c), racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), two counts of murder in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(1), and multiple counts of attempted murder and/or assault in-aid-of-racketeering, in violation of 18 U.S.C. §§ 1959(a)(3) and (5), respectively.  Chambers is also

charged with wire fraud conspiracy, in violation of 18 U.S.C. § 1349 and conspiracy to commit murder in-aid-of racketeering, in violation of 1959(a)(6). Jerell Shaw ("Shaw") is charged with, <u>inter alia</u>, racketeering, in violation of 18 U.S.C. § 1962(c), racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), one count of murder in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(1), and kidnapping and kidnapping conspiracy, in violation of 18 U.S.C. §§ 1201(a) and (c), respectively. Shaw is also charged with wire fraud conspiracy, in violation of 18 U.S.C. § 1349, bank fraud, in violation of 18 U.S.C. § 1344, receipt of stolen property, in violation of 18 U.S.C. § 2315, and money laundering, in violation of 18 U.S.C. § 1956. Jonathan Vazquez ("Vazquez") is charged with, <u>inter alia</u>, racketeering, in violation of 18 U.S.C. § 1962(c), racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), one count of murder in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(1), multiple counts of attempted murder and/or assault in-aid-of-racketeering, in violation of 18 U.S.C. §§ 1959(a)(3) and (5), respectively, and Hobbs Act Robbery and Hobbs Act Robbery Conspiracy, in violation of 18 U.S.C. § 1951(a). Vazquez is also charged with wire fraud conspiracy, in violation of 18 U.S.C. § 1349, and conspiracy to commit murder in-aid-of racketeering, in violation of 1959(a)(6). <u>See</u> ECF No. 164 (Superseding Indictment S-3).

The charges arise out of the defendants' membership and participation in a violent criminal organization known as the Crips. Chambers and Vazquez are members of the Crip subset known as the Insane Crip Gang, or "ICG," while Shaw is a member of the Rollin' 60s Crips subset. The defendants participated in the affairs of the Crips enterprise through a pattern of racketeering activity. The types of racketeering activity that these defendants participated in ranges from wire fraud to murder, no crime was off limits. Indeed, each defendant is charged with their role in at least one murder, and at least one other violent crime involving firearms.

II.   <u>Argument</u>

A.   <u>Pursuant to Rule 609, if Defendant Shaw Elects to Testify, the Government Should be Permitted to Cross-Examine Him Regarding a Prior Criminal Conviction</u>

The government seeks to cross-examine defendant Jerell Shaw about one of his four prior convictions, pursuant to FRE 609. Specifically, the government seeks to cross-examine the defendant about his November 28, 2017, conviction for Attempted Possession of a Forged Instrument in the Second Degree, in violation of New York Penal Law §§ 110.00 and 170.25,[1] and the underlying facts. The facts of this conviction are discussed below:

On February 8, 2017, Shaw had a meal at The Capital Grille in East Garden City, New York. When presented with the bill for $326.00, Shaw provided the waiter with a fraudulent credit card to pay for the meal. Restaurant staff attempted to process the card and received an error message. Restaurant staff inspected the card more closely and realized it was a forged card. The

---

[1] This statute provides in relevant part that "[a] person is guilty of criminal possession of a forged instrument in the second degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses any forged instrument[.]" N.Y.P.L. § 170.25.

restaurant staff contacted the Nassau County Police Department and Shaw was arrested.  A subsequent investigation revealed that the credit account linked to the forged card, which purported to be an HSBC Visa Signature credit card, was actually a credit account belonging to a Capital One Bank Visa business credit account. Shaw pled guilty to this class E felony offense.

FRE 609 governs the admissibility of evidence of prior convictions for impeachment purposes.  As relevant here, if the witness is a criminal defendant, evidence of a prior felony conviction is admissible "if the probative value of the evidence outweighs its prejudicial effect to that defendant."  FRE 609(a)(1)(B).  Under Rule 609(a)(1), the "evidence" of prior convictions that may be admitted includes "the essential facts of a witness's convictions, including the statutory name of each offense, the date of conviction, and the sentence imposed."  United States v. Estrada, 430 F.3d 606, 615 (2d Cir. 2005); see also United States v. Brown, 606 F. Supp. 2d 306, 315-16 (E.D.N.Y. 2009) (same).

In weighing the probative versus prejudicial value of impeaching a defendant with a prior conviction, courts generally consider five factors: (1) the impeachment value of the prior crimes; (2) the date of the convictions and the defendant's subsequent history; (3) the degree of similarity between the past crimes and the charged crime, with dissimilarity favoring admission; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue.  See United States v. Hayes, 553 F.2d 824, 828 (2d Cir. 1977); see also United States v. Jimenez, 214 F.3d 1095, 1098 (9th Cir. 2000); United States v. Smith, 131 F.3d 685, 687 (7th Cir. 1997); United States v. Sloman, 909 F.2d 176, 181 (6th Cir. 1990); Jones v. City of New York, No. 98 Civ. 6493 (LBS), 2002 WL 207008, at *2 (S.D.N.Y. Feb. 11, 2002).

Here, all five factors weigh in favor of permitting the government to impeach Shaw with this prior conviction.  With respect to the first factor, the impeachment value of the prior crime, which is a crime of dishonesty under FRE 609(a)(2), is overwhelming, and clearly weighs heavily in favor of admission.  Indeed, there are no crimes more probative for a witness's credibility than crimes of dishonesty, which have as an element the intent to defraud or deceive.  Indeed, when crimes of this type fall within the 10-year limitation period, they are automatically admissible without any need for weighing their probative value against their prejudicial effect. See United States v. Klein, 438 F.Supp. 485, 486-87 (S.D.N.Y. 1977).

The second factor, the date of the conviction, weighs in favor of admission.  Here the crime was committed and the conviction sustained within the past ten years.  See FRE 609(b).

The third factor, dissimilarity to the current crime, clearly weighs in favor of admission of evidence of the conviction   Shaw is charged with racketeering, kidnapping, murder and murder conspiracy, crimes clearly dissimilar from the possession of a forged instrument. While Shaw is charged with wire fraud and bank fraud, the way those frauds are alleged to have been committed is not through forgery or the use of forged instruments.

The fourth and fifth factors – the importance of the defendant's testimony and the centrality of the credibility issue – also weigh in favor of the admission of evidence of the conviction.  Whenever a defendant testifies and denies having committed the charged offense, he

3

places his credibility directly at issue.  See United States v. Alexander, 48 F.3d 1477, 1489 (9th Cir. 1995).  Regardless of the substance of the defendant's testimony, once he places his version of the events before the jury, his credibility becomes central to the jury's determination of the case. To permit the defendant to take the stand and appear "pristine" would be "unfair and misleading to the jury."  United States v. Ortiz, 553 F.2d 782, 785 (2d Cir. 1977).

When evaluating all these factors, the probative impeachment value of the prior conviction is great, as it demonstrates clearly and conclusively that the defendant has attempted to deceive to serve his purposes on a past occasion.  The prejudicial effect of this conviction, which is dissimilar from the bulk of the charges against Shaw in this case, is minimal.  For these reasons, the government should be allowed to cross-examine Shaw about his prior conviction for Attempted Possession of a Forged Instrument, as its probative value substantially outweighs any potential prejudicial effect.

B.  Evidence of Each of the Defendants' Prior Incarceration is Admissible

Evidence of uncharged acts, even uncharged acts that amount to criminal activity, is admissible as direct evidence of the crimes charged in the indictment. See, e.g., United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000); United States v. Thai, 29 F.3d 785, 812 (2d Cir. 1994); United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989). In Towne, the Second Circuit specifically identified three categories of uncharged criminal activity that constitute direct evidence of the charged offense:

> Evidence of uncharged criminal activity is not considered "other crimes" evidence under Fed. R. Evid. 404(b) if it satisfies one of these three requirements: (1) it "arose out of the same transaction or series of transactions as the charged offense," (2) it is "inextricably intertwined with the evidence regarding the charged offense," or (3) if it "is necessary to complete the story of the crime [on] trial."

Towne, 870 F.2d at 886 (quoting United States v. Weeks, 716 F.2d 830, 832 (11th Cir. 1983)); see also Carboni, 204 F.3d at 44; United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997).  On this basis, "the trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." Gonzalez, 110 F.3d at 941 (quoting United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir.1991)).  The Second Circuit has interpreted this category of evidence to include acts that provide necessary background or context for the charged crimes. See United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) (evidence of other "bad acts" may be admitted "to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense"); Coonan, 938 F.2d at 1561.

Moreover, it is "well settled in the Second Circuit that where an indictment contains a conspiracy charge, '[a]n act that is alleged to have been done in furtherance of the alleged

4

conspiracy' is considered to be 'part of the very act charged.'" United States v. Barrett, No. 10-CR-809 (KAM), 2011 WL 6704862, at *4 (E.D.N.Y. Dec. 21, 2011) (quoting United States v. Diaz, 176 F.3d 52, 79 (2d Cir. 1999)); see also Diaz, 176 F.3d at 80 (other bad acts evidence admitted to show how "drug conspirac[y] evolved, and how illegal relationships and mutual trust developed between co-conspirators"); Thai, 29 F.3d at 812 (stating that, in conspiracy cases, "uncharged acts may be admissible as direct evidence of the conspiracy itself"). Such acts are therefore inextricably intertwined with, and direct evidence of, the charged conspiracy and not subject to Rule 404(b).

Uncharged conduct may be admissible even if it occurred prior to the charged conspiracy if it allows the jury to understand the origin of a defendant's participation in the charged conspiracy, as well as relationships between the coconspirators. See United States v. Langford, 990 F.2d 65, 70 (2d Cir. 1993) ("It is within the court's discretion to admit evidence of acts committed prior to the time charged in the indictment to prove the existence of the alleged conspiracy as well as to show its background and history."); United States v. Rivera, No. 13-CR-149 (KAM), 2015 WL 1875658, at *3 (E.D.N.Y. Apr. 22, 2015) (finding that acts by coconspirators prior to the start of the conspiracy elaborate on the relationship between the defendants).

Alternatively, under Rule 404(b), evidence of a defendant's "other crimes, wrongs, or acts" is admissible when offered for any purpose other than the defendant's criminal propensity. See, e.g., United States v. Germosen, 139 F.3d 120, 127 (2d Cir. 1998); United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984). Rule 404(b) itself contains a non-exhaustive list of proper purposes for which "other act or crime" evidence may be admitted, including "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Fed. R. Evid. 404(b); see also Levy, 731 F.2d at 1002. Although the government must explain "the purposes for which the evidence is sought to be admitted," the Second Circuit has emphasized that Rule 404(b) is a rule of broad reach and liberal application. Levy, 731 F.2d at 1002 ("We have adopted the inclusionary or positive approach to [Rule 404(b)]; as long as the evidence is not offered to prove propensity, it is admissible.").

A party must satisfy three requirements in order for evidence of "other crimes, wrongs or acts" to be admitted under the rule. First, the evidence must be offered for a purpose other than to prove the defendant's bad character or criminal propensity. See United States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1991) (citing United States v. Colon, 880 F.2d 650, 656 (2d Cir. 1989)). Second, the evidence must be relevant under Rules 401 and 402 and more probative than prejudicial in accordance with Rule 403. See Mickens, 926 F.2d at 1328; Levy, 731 F.2d at 1002. Third, if the defendant requests a jury instruction as to the limited purpose for which the government's evidence is admitted, the court must furnish such an instruction. See Mickens, 926 F.2d at 1328-29; Levy, 731 F.2d at 1002.

The Second Circuit repeatedly has held that evidence of uncharged crimes may be admitted at trial to establish the existence and evolution of a relationship of trust between coconspirators. See, e.g., United States v. Williams, 205 F.3d 23, 33-34 (2d Cir. 2000) (upholding admission of evidence relating to the defendant's prior criminal activities with coconspirators in charged drug conspiracy as relevant evidence to inform jury of the background of the conspiracy

charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed); United States v. Pipola, 83 F.3d 556, 565-66 (2d Cir. 1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case.")[2]

Under Federal Rule of Evidence 403, otherwise admissible evidence may be excluded only where its "probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The fact that evidence is highly probative of guilt does not mean it is unfairly prejudicial. See, e.g., United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir. 1995) ("Generally speaking, any proof highly probative of guilt is prejudicial to the interests of that defendant."). As the Supreme Court has instructed, "[w]hile an important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence, a fair trial does not include the right to exclude relevant and competent evidence." Zafiro v. United States, 506 U.S. 534, 540 (1993) (internal brackets, citations, and emphasis removed).

Here, the government seeks to admit evidence of prior and pretrial incarceration of each defendant. As to defendant Chambers, the government will offer evidence of his incarceration at Nassau County Jail ("NCJ") in 2018, pretrial detention at NCJ in 2022 and evidence of Chambers displaying his gang affiliation while detained at the Metropolitan Detention Center ("MDC"). As to defendant Vazquez, the government will offer evidence of his incarceration in the New York State prison system from October 2018 to October 2021, as well as evidence of his pretrial incarceration at the NCJ in 2022. As to defendant Shaw, the government will offer evidence of Shaw's prior incarceration at the NCJ in 2017 and evidence of his pretrial incarceration at the MDC. For the reasons set forth below, the evidence is admissible as direct evidence of the crime on trial. Alternatively, the evidence is also admissible pursuant to FRE 404(b).

---

[2] Several Second Circuit decisions appear to analyze other acts evidence pertaining to the relationship of trust among coconspirators under the rubric of Rule 404(b). See e.g., United States v. McPartland, 81 F.4th 101, 116-117 (2d Cir. 2023). Others, however, have suggested that relationship of trust evidence, at least in conspiracy cases, is synonymous with direct proof of a charged conspiracy or evidence that provides crucial background to the charged offenses, and thus may be admitted without regard to Rule 404(b). See, e.g., United States v. Moten, 564 F.2d 620, 628 (2d Cir. 1977) ("[P]roof of prior drug dealing by individual defendants with Brown at a time previous to commencement of the conspiracy charged was clearly admissible to show the basis for the existence of the conspiracy charged and the mutual trust which existed between Brown and his customers. It was therefore admissible against all the defendants to show the nature and existence of the conspiracy charged."); United States v. Morillo-Vidal, 547 F. App'x 29, 30-31 (2d Cir. 2013) (testimony regarding other crimes was admissible because it was "relevant background information" that, inter alia, "explained [a co-conspirator's] relationship to his co-conspirator [] and his knowledge of [the co-conspirator's] role in a national drug conspiracy," evidence that qualifies as "highly probative when the charged conduct covers a conspiracy").

First, evidence of Chambers' incarceration in 2018 and Vazquez's incarceration from 2018 to 2021[3] is being offered as direct evidence of the charged offenses. One important purpose is that such evidence will explain the defendants' absence from the ongoing racketeering enterprise for an extended period. In the absence of such evidence, the jury may be confused or speculate that the defendants had voluntarily separated themselves from the criminal enterprise, when that is certainly not the case. Accordingly, on that basis alone, the evidence is essential to complete the narrative of the crime on trial. Further, witnesses will explain that the gang regularly supported members who were incarcerated, and they will speak to efforts to support Chambers and Vazquez while incarcerated at these times. Indeed, there will be social media posts between gang members requesting that money be put into the commissary accounts of Vazquez. There are also discussions amongst members of the gang about retaliating against rivals for an attack on Vazquez while incarcerated and about obtaining contraband for Vazquez while incarcerated. Additionally, there will be witness testimony that will explain that Vazquez remained a Crip member while in the New York State prison system which earned him a considerable amount of respect within the gang, as many individuals do not maintain Crip affiliation in New York State prisons.

Second, evidence of Shaw's 2017 incarceration at NCJ is being offered as direct evidence that completes the narrative of the crimes on trial. Specifically, this evidence is necessary to explain how Shaw, a Rollin' 60s Crip from Brooklyn, linked up with ICG Crips from Long Island. Witnesses will explain that during that period of incarceration, Shaw was in the same unit as Lesly Pardo, an ICG member from Long Island with considerable status within the gang. Witnesses will explain that this meeting was the genesis of the relationship between the Long Island ICG and Brooklyn Rollin' 60s, and that after Pardo and Shaw were incarcerated together and formed a friendship, ICG members from Long Island began to engage in criminal conduct with Shaw. Further, the fact that Shaw and Pardo met in jail provides important context to their relationship and their trust in one another to begin committing crimes together following their respective releases.

Third, evidence of Chambers' pretrial incarceration at NCJ in 2022 is being offered as direct evidence that further demonstrates the link between ICG and Shaw. Specifically, following Chambers' July 2022 arrest by state authorities, Chambers' girlfriend began speaking to Shaw in an effort to coordinate raising money for an attorney for Chambers and also to arrange for calls between Shaw and Chambers. This evidence not only further demonstrates the relationship between the defendants, but also demonstrates that Crip gang members are expected to support incarcerated members. This evidence also demonstrates the relationship between Chambers and Shaw, i.e., Chambers expects the assistance of Shaw in retaining an attorney for him while incarcerated and awaiting trial.

---

[3] The government does not anticipate discussing the facts underlying Vazquez's convictions leading to his incarceration from 2018 to 2021. However, the government does anticipate offering evidence of Chambers' conviction leading to his incarceration in 2018, specifically, that he was convicted of gun possession following a shooting incident. Evidence of this crime is direct evidence of several elements of the racketeering charges.

Fourth, evidence of Vazquez's pretrial incarceration in NCJ in 2022 and Shaw's pretrial incarceration at MDC in 2024 is being offered to provide vital context and background to admissions that each defendant made to other inmates who the government will be calling as witnesses at trial. This evidence is inextricably intertwined with evidence of the charged crimes, i.e., the admissions to charged crimes. Further, the fact that the defendants are incarcerated with the individuals to whom they made their admissions provides vital evidence that demonstrates the relationship of trust between the defendants and the witnesses to the admission.

Finally, the government will offer evidence of Chambers and another ICG member posing for a picture taken with a contraband phone at the MDC, which photograph was then publicly posted to social media with Crip and ICG symbols displayed on the post. This evidence is direct evidence demonstrating Chambers' ongoing affiliation with the Crips and the desire to promote the gang at all times.

Because the evidence set forth above is direct evidence of the charged crimes, and alternatively, is being offered for purposes other than to prove criminal propensity, the Court should permit its admission. The probative value of the evidence the government seeks admit carries no undue prejudice, where, as here, the evidence to be admitted is not nearly as serious as the charged crimes and the Court can give an appropriate limiting instruction. See McPartland, 81 F.4th at 118-19; Williams, 205 F.3d at 34.

### C. The Cout Should Preclude Defendant Vazquez from Offering His Self-Serving Hearsay Statements

The government next requests that the Court preclude defendant Vazquez from offering two self-serving hearsay statements and to preclude Vazquez's counsel from attempting to elicit the statements from government witnesses during cross examination. The first statement relates to Vazquez's involvement in the November 2016 murder of Joecephus Vanable and was allegedly made to a fellow gang member. In 2018, a fellow ICG member related to law enforcement that approximately two days after Vanable's murder Vazquez spoke to him via a Facetime call and during the call, when discussing Vanable's killing, stated "Bro, I didn't know that was going to happen." The second statement relates to Vazquez's involvement in the March 1, 2022 attempted murder of two Nassau County Police Officers who were attempting to apprehend him. While incarcerated in the Nassau County Jail, Vazquez stated to another inmate, in substance and relevant part, that he shot at the police to get them to back off him, but he did not intend to kill them. These two self-serving statements will be referred to collectively as "Vazquez's Statements."

The Court should preclude defendant Vazquez from offering his own self-serving statements as both statements are inadmissible hearsay. "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982); United States v. Black, No. 13-CR-316 (DLI), 2014 WL 5783067, at *2 (E.D.N.Y. Nov. 5, 2014) ("[T]he defendant's self-serving, exculpatory statements are inadmissible hearsay . . ..").  In general, a defendant may not "attempt to get his side of the . . . story in front of the jury without himself testifying and opening himself up to cross-examination." See United States v. Davidson, 308 F. Supp. 2d 461, 480 (S.D.N.Y.

8

2004). This prohibition applies, with limited exception, even where a defendant seeks to offer other parts of the same conversation or message offered by the government. See United States v. Hill, 658 F. App'x 600, 605 (2d Cir. 2016) (affirming the district court's parsing of a defendant's recorded statement to admit the discrete inculpatory statements and exclude the other self-serving statements that he was "innocent"); United States v. Johnson, 507 F.3d 793 (2d Cir. 2007) (holding that the court properly bifurcated a defendant's post-arrest statement and precluded the defense from introducing a self-serving portion of the statement because "Rule 106 does not render admissible evidence that is otherwise inadmissible"); United States v. Blake, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) ("[T]he rule of completeness is 'not a mechanism to bypass hearsay rules for any self-serving testimony.'" (quoting United States v. Gonzalez, 399 F. App'x 641, 645 (2d Cir. 2016))).

Here, Vazquez's Statements are clearly self-serving hearsay. While Vazquez's Statements would be admissible on the government's direct case as the statements by a party opponent under Rule 801(d)(2)(A), there is no hearsay exception that allows for the admission of a defendant's own statements otherwise. Therefore, the Court should preclude the defense from introducing Vazquez's Statements at trial, either through cross examination of the government's witnesses or on any defense direct case. In short, should Vazquez wish to have the jury hear his version of events, he is free to testify at trial.

## D. Evidence of Punishment or Collateral Consequences Is Inadmissible

The Court should preclude the defendants from referencing at trial any consequences of their conviction, including the potential prison sentence they face if convicted. While the defendants' counsel have not suggested that they intend to introduce any discussion of possible sentences at trial, the government moves, in an abundance of caution, to preclude at trial any discussion of the defendants' possible punishment or collateral consequences of conviction.

Evidence regarding possible consequences the defendant may face if convicted should be precluded because it is not relevant. Pursuant to Rule 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." "[T]he district court has broad discretion to exclude evidence that is irrelevant . . .." United States v. Edwards, 631 F.2d 1049, 1051 (2d Cir. 1980); see also Fed. R. Evid. 403. The defendant's punishment is not a fact "of consequence" to be determined at trial. Therefore, any evidence of this issue is not relevant. See Shannon v. United States, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task."). Such evidence is not only irrelevant, but "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." Id. Indeed, jurors are routinely instructed not to consider a defendant's punishment in determining a defendant's guilt. See generally Sand, et al., Modern Federal Jury Instructions, Instruction 9-1 (2017 ed.); see also Shannon, 512 U.S. at 579 (a jury "should be admonished to reach its verdict without regard to what sentence might be imposed [and] not to consider the consequences of their verdicts . . . ." (internal citation omitted)); United States v. Watts, 934 F. Supp. 2d 451, 464-65 (E.D.N.Y. 2013) ("[I]t is well-established precedent that jurors should not be informed about the possible

9

consequences of their verdict due to the likelihood that prejudice, unfairness, and confusion that would result.").

Courts regularly preclude evidence of the potential sentences defendants face on the grounds that such evidence is irrelevant, unfairly prejudicial and outside the province of the jury.  See, e.g., United States v. Blume, 967 F.2d 45, 49 (2d Cir. 1992) ("Federal courts usually instruct juries not to consider a verdict's consequences"); In short, guilt should determine punishment, not the other way around.  See United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997) ("Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court . . ..  We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that the courts may permit it to occur when it is within their authority to prevent.").  Courts have consistently recognized that juries have no right to nullify, and "trial courts have the duty to forestall or prevent such conduct."  Id. at 616.  Therefore, the Court should preclude the defendant from referencing potential punishment and collateral consequences at trial.[4]

### III.   Conclusion

For the reasons set forth above, the government respectfully requests that the Court grant the motion to permit the government to (1) cross examine defendant Shaw with evidence of a prior conviction pursuant to FRE 609, and (2) introduce evidence of the prior/pretrial incarceration of each defendant, and to preclude the defendants from introducing evidence of (1)

---

[4] Nevertheless, to the extent that a defendant exercises his right to testify at trial, the government should be permitted to cross-examine him regarding the potential consequences of conviction that he faces because, under those circumstances, it is relevant to the defendant's credibility as a witness.  See Davis v. Alaska, 415 U.S. 308, 316 (1974) (discussing use of cross-examination to reveal "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues . . . in the case at hand.  The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony." (internal quotation omitted)).

false exculpatory statements made by the defendant Jonathan Vazquez; and (2) any punishment or adverse consequences the defendants may face upon conviction.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     ___/s/_____
Michael R. Maffei
Andrew P. Wenzel
Kaitlin C. McTague
Assistant U.S. Attorneys
(631) 715-7890

cc:     Clerk of the Court (JMA) (by ECF)
        Steve Zissou, Esq. (by ECF and email)
        Glenn Obedin, Esq. (by ECF and email)
        Xavier Donaldson, Esq. (by ECF and email)