

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MRM/APW/KCM                                          *610 Federal Plaza*
F. #2020R00784                                       *Central Islip, New York 11722*

January 23, 2026

By ECF

The Honorable Joan M. Azrack
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11201

    Re: United States v. Akeem Chambers, et al.
       Criminal Docket No. 23-157 (S-3) (JMA)

Dear Judge Azrack:

    The government respectfully submits this letter in opposition to defendant Chambers' motions in limine, joined by defendants Vazquez and Shaw, filed January 21, and January 22, 2026, in which the defendants seek to preclude a broad range of evidence: namely, (1) "exhibits depicting unidentified individuals or lacking connection to Chambers;" 2) "cumulative 'gang sign' photographs;" 3) "photographs displaying cash;" 4) "inflammatory rap lyrics and music videos;" 5) "grave desecration evidence;" 6) "social media posts with purportedly threatening or inflammatory captions;" and 7) "additional inflammatory exhibits." See ECF Doc. No. 358 and 364. The defendants cite Federal Rules of Evidence 401, 402 and 403 as the basis for preclusion.[1]

---

[1] To the extent that the defense relies United States v. Sampson, 385 F.3d 183 (2d Cir. 2004), in support of their arguments related to racketeering evidence in this case, their reliance is extremely misplaced. Sampson is not a racketeering case at all. Instead, Sampson addresses 404(b) evidence in a narcotics case. Notably, in their January 22 motion, the defense doubled down on their reliance on Sampson, despite its inapplicability to racketeering cases.

    As set forth herein, the evidence challenged in this case is being offered as direct evidence of the racketeering enterprise charged, not as 404(b) evidence. The Second Circuit has long upheld the admission of information about uncharged crimes—including, among other violent conduct, murders—in racketeering cases as direct evidence of the charged enterprise. See, e.g., United States v. Baez, 349 F.3d 90, 93 (2d Cir. 2003) ("It is well settled that in prosecutions for racketeering offenses, the government may introduce evidence of uncharged offenses to establish the existence of the criminal enterprise."). In its previous oppositions to defendants' motion in

For the reasons discussed below the defendants' motion should be denied in its entirety. The defendants are charged with, inter alia, racketeering, in violation of 1962(c), and racketeering conspiracy, in violation of 1962(d), for criminal conduct spanning eight years due to their membership and participation in a racketeering enterprise known as the Crips (hereafter "the Enterprise"). As such, evidence that tends to prove the Enterprise's existence, membership, practices, activities, associations and public demonstrations of the same is all relevant to prove elements of the charged offenses, elements that must be found by the jury beyond a reasonable doubt.

The defense motions repeatedly use the words "inflammatory" and "prejudicial." But what those labels actually reflect is the highly probative value and extreme relevance of the evidence. Indeed, the disputed evidence depicts the essential elements of crimes charged in the indictment. When the defense labels complains of evidence being as "inflammatory" and "prejudicial," what it is actually bemoan is that the evidence is highly probative, extremely relevant and overwhelmingly demonstrates the defendants' guilt.

I.    Procedural History

As an initial matter, the government provided the defense with the exhibits it planned to introduce into evidence on December 5, 2025. Now, seven weeks later, on January 21 and January 22, 2026, after a jury has been chosen and three days before opening statements and testimony, the defense filed successive motion in which they repeat the same arguments. Because the defendants have elected not to make argument as to each specific piece of evidence, but instead has generalize their descriptions of evidence to which they object, they are asking the Court to rule on their motion in a vacuum. Due to this late stage challenge to exhibits disclosed seven weeks ago, the government would request the opportunity provide an offer of proof as to each and every challenged piece of evidence should the Court require additional information prior to rendering a decision.

The evidence which the defendants now seek to preclude (hereinafter the "challenged evidence") numbers in the hundreds of exhibits. All of the challenged evidence falls between government exhibit numbers 1 and 510, 615-625 and 3004. The source of these items of evidence is important to the analysis here. Exhibits 1 through 510 are all derived from social media accounts and/or electronic devices of the following individuals: Akeem Chambers, Jonathan Vazquez, Jerell Shaw, Lesly Pardo, Rob Pardo, Jalen Rogers, Cooperating Witness One and Cooperating Witness Two.[2]   Exhibits 615-625 consist of videos posted by members of the Enterprise to YouTube or other publicly-available platforms. Exhibit 3004 are handwritten notes

---

limine, the government has repeatedly highlighted its opposition to the defendants' requests that evidence of certain conduct be excluded as "uncharged racketeering activity." See Government's Response to Defense Motions in Limine at ECF No. 315 and 341. The government incorporates those previous arguments into this response.

[2] Lesly Pardo, Rob Pardo, Jalen Rogers and both cooperating witnesses have all admitted under oath that they were members/associates of the charged enterprise.

recovered from and written by Aerris Grant, a member of the Enterprise, who was under arrest for a shooting in Uniondale, New York.

Furthermore, the defense has indicated that it intends to file additional motions in the same fashion, seemingly on a daily basis. The government respectfully asks the court to instruct the defense to cease filing these motions in a piecemeal fashion.

II.    Applicable Law

a.    Federal Rules of Evidence 401, 402 and 403

Pursuant to Rule 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  The threshold for relevance is "very low."  United States v. Abu-Jihaad, 630 F3d. 102, 131 (2d Cir. 2010).  Rule 402 provides that relevant evidence is admissible unless any of the following provide otherwise: (1) the United States Constitution; (2) a federal statute; (3) the Federal Rules of Evidence; and (4) other rules prescribed by the Supreme Court.

Rule 403 excludes evidence only where the danger of unfair prejudice substantially outweighs its probative value.  As the Second Circuit has explained, evidence is not unfairly prejudicial merely because it is harmful to the defense.  United States v. Roldan-Zapata, 916 F2d 795, 804 (2d Cir. 1990).  "Evidence is unduly prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence."  United States v. Kadir, 718 F3d 115, 122 (2d Cir. 2013).  As the Supreme Court has instructed, "[w]hile an important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence, a fair trial does not include the right to exclude relevant and competent evidence."  Zafiro v. United States, 506 U.S. 534, 540 (1993).  Furthermore, where the content of the evidence "did not involve conduct more inflammatory than the charged crime," it is generally not unduly prejudicial.  United States v. Paulino, 445 F3d 211, 233 (2d Cir. 2006).

b.    The Government Must Prove the Existence of the Enterprise

To prove substantive racketeering, in violation of 18 U.S.C. § 1962(c), the government must prove (1) the existence of an enterprise, (2) that the enterprise had an effect on interstate commerce, (3) that each defendant was associated with or employed by the enterprise, (4) that each defendant engaged in a pattern of racketeering activity, and (5) that each defendant conducted or participated in the conduct of the enterprise through that pattern of racketeering activity.  See U.S.C. §1962(c).[3]  The government must prove each of these elements beyond a reasonable doubt.  Accordingly, evidence tending to prove any of the above issues (which the

---

[3] Racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), provides that "it shall be unlawful for any person to conspire to violate [subsection 1962(c)]."

government anticipates the defendants will dispute) is extremely relevant and probative to central issues at trial.

Similarly, in addition to racketeering and racketeering conspiracy, defendants Chambers and Vazquez are also charged with a years' long conspiracy to kill rivals, and several specific violent crimes committed in-aid-of racketeering, in violation of 1959. Shaw is also charged in a conspiracy to commit murder in-aid-of racketeering, in violation of 1959(a)(6). Section 1959, like section 1962, requires the government to prove the existence of an enterprise that engages in racketeering activity as well as an enterprise related motive for the crime. Accordingly, evidence tending to prove killings, attempts to kill, assaults or attack on rivals in an ongoing gang war is highly relevant and extremely probative. As set forth below, the challenged evidence is direct evidence that proves the defendants' guilt of the charged offenses.

III.   Discussion

As an initial matter, the relevance of the challenged evidence is demonstrated by the defendants' descriptions of the challenged evidence. Indeed, the defense alleges the government intends to offer too many exhibits containing photos and videos demonstrating: gang hand signs, firearms, cash, rap lyrics about criminal conduct, vandalizing rival gang members graves, and "inflammatory captions" in which the defendants and their associates brag about violence, taunt rivals and demonstrate gang membership. All of this evidence his highly relevant in the racketeering context. The defendants' affiliations, access to firearms, cash proceeds of frauds, lyrics about criminal conduct and taunting of rivals are all highly relevant to the charges on trial.

The defendants have failed to demonstrate that any of the challenged evidence is in unfairly prejudicial. The challenged evidence consists of photos, videos and social media posting depicting how the defendants chose to display themselves, their communications with one another, or their public displays of disdain for their rivals. The defendants have not demonstrated how this evidence is unfairly prejudicial, let alone demonstrate that any alleged unfair prejudice outweighs the probative value. Importantly, the source of the challenged evidence are phones and social media accounts of the defendants themselves, or phones and social media accounts of members and associates of the Enterprise. While the challenged evidence is certainly extremely inculpatory and has tremendous probative value, the evidence is in no way unfairly prejudicial or more inflammatory than other evidence in the case. Indeed, the challenged evidence consists of gang signs, taunts of rivals and firearm possession. There will be other evidence at trial, which is unchallenged by the defendants, which show the defendants actually shooting people, holding people at gun point, and robbing people.

The government will offer evidence, including the challenged evidence, to establish the defendants' membership in the Enterprise, as well as evidence of the Enterprise's racketeering activity, including numerous violent crimes, illegal money-making ventures, and years long violent gang war with rivals. That evidence will be introduced through, among other things, the testimony of cooperating witnesses; photographs and videos depicting members and associates of the Enterprise; and social media posts and messages between members and associates of the Enterprise. Each of the above categories of proffered evidence is highly relevant and probative of

the charged crime, and the defendants will not be unfairly prejudiced by the admission of such evidence. Indeed, evidence concerning the gang and its operations is necessary to prove an essential element of racketeering, which charges the defendants with conducting and participating in the affairs of the Crips through a pattern of racketeering activity. This evidence is even more necessary in this particular case, as the defendants have already intimated that they intend to argue that certain criminal acts were isolated and not linked to the Enterprise.

To the extent that the defendants claim the challenged evidence lacks foundation, such an objection is premature. At trial the government will be able to lay a sufficient foundation for the admission of each piece of evidence and to demonstrate its relevance through witness testimony, if the relevance is not readily apparent from the face of the evidence.

The defendants' objection based upon the challenged evidence being cumulative is likewise premature. The government is aware of the need to avoid duplicative pieces of evidence and will not waste the court or jury's time. However, the government has the right – indeed, it is required – to demonstrate the scope of the criminal enterprise and link between the charged crimes and the Enterprise. Here, the government is likely not seeking to offer every exhibit it has marked and not all of the challenged evidence will be offered for the same purpose (or the purposes alleged by the defendants). Some evidence will establish the operations of the enterprise, some will establish its existence, some will establish its membership, some will establish the defendants' membership in the enterprise, and some will establish the commission of the charged crimes. These is not an exhaustive list of the purposes for which such evidence is relevant and probative, merely illustrative.

    a. <u>Photographs, Videos and Social Media Posts</u>

The defendants broadly argue that the government should be limited in presenting photographs and videos depicting different types of evidence; specifically, photographs of the defendants displaying gang signs; photographs of individuals who are not the trial defendants; photographs of large amounts of cash; and social media posts.

As an initial matter, the government's investigation has revealed several thousand relevant photographs, videos and social media posts of the defendants' involvement in the Enterprise. The government has already culled those thousands of images and videos and will not introduce into evidence items that are unnecessarily duplicative or cumulative. The government has currently pre-marked approximately 500 such items as potential exhibits but does not plan to introduce every marked item. The fact that the defendants and the Enterprise generated a tremendous volume of inculpatory evidence does not render the evidence inadmissible. Indeed, the bulk of the marked exhibits are photos, videos or social media posts created by the defendants themselves, or their close associates.

Importantly, this is a racketeering case spanning more than eight years with an Enterprise comprised of dozens of individuals and operating out of numerous different locations. As such, evidence of the Enterprise 1) existing for several years; 2) being comprised of numerous different members who each have different associates with each other; 3) using numerous different locations; 4) conspiring to kill numerous different rivals; 5) and involved in numerous different

5

types of criminal activities, is probative of the longevity, continuity and pattern of the enterprise – core indicia of a criminal enterprise and characteristics the government is required to prove. United States v. White, No. 19-3313, 2021 WL 3355166, at *3 (2d Cir. Aug. 3, 2021) (concluding there was sufficient evidence from which the jury could find the existence of the enterprise, including "photographs showing that MBG members had tattoos signifying their membership in MBG and affirmed their membership in MBG through posts on social media"); United States v. Smothers, No. 20-CR-213 (KAM), 2023 WL 348870, at *21 (E.D.N.Y. Jan. 20, 2023) ("[O]ther E.A.M. members' discussions regarding E.A.M.; their own affiliations with the E.A.M. enterprise; and in particular their knowledge of and affiliation with [the defendant], clearly have significant probative value in proving the existence of E.A.M. itself and of [the defendant's] association with the enterprise."); United States v. Ashburn, No. 11-CR-303 (NGG), 2015 WL 588704, at *12 (E.D.N.Y. Feb. 11, 2015) (finding that "[e]vidence regarding the founding of Six Tre is classic enterprise evidence, and is relevant and admissible to prove the existence of the alleged conspiracy as well as to show its background and history").

In short, it would be impossible to convey the longevity and scope of the Enterprise, as well as the various relationships within the Enterprise and against rivals with only a handful of photographs and videos.

Furthermore, the defense's motion demonstrates a fundamental misunderstanding of much of the evidence and why it is relevant. For example, the defense motion cites Exhibits 60 and 61 as video of an unidentifiable person being beaten by a second unidentified person and are, therefore, irrelevant. In actuality, exhibits 60 and 61 are video involving one Crip assaulting another Crip over an alleged theft, and Chambers can be seen on the video watching the beating and video recording it himself. Additionally, a government witness will explain how Chambers had planned to kill the individual who was assaulted because he had stolen money from the other Crip, but ultimately it was decided that the individual be assaulted and not killed. This is relevant information that is extremely probative of Chambers' involvement in the Enterprise. There will be numerous other instances where government witnesses will provide necessary context and explanations for photographs and videos that are highly relevant.

The defense arguments about the purportedly inflammatory social media posts fail for the same reasons discussed above. For example, the defense request to exclude exhibits 192 and 223 is meritless, as the exhibits depict Chambers wearing a unique sweatshirt that is identical to the sweatshirt worn by the shooter during an attempted murder at the Freeport Inn Motel on December 19, 2020. (See Count One, Racketeering Act Seven and Counts Sixteen through Eighteen.) The probative value of this evidence is extremely high, and the prejudicial impact of the evidence, other than it demonstrates Chambers committed a violent attempted murder, is non-existent.

Similarly, the defense objects to exhibits 431.12, which is a post from defendant's Shaw's Instagram page. In this post Shaw is promoting a rap video made by the Long Island ICG, including defendant Chambers. Shaw captioned his post "Rollin babies" with numerous fire emojis. Witnesses will describe this as Shaw promoting the link between his Crips Set, known as the "Rolling 60's" and the Long Island ICG, also known as "Babies." This is highly relevant evidence.

6

Chambers, echoing Shaw's argument in his letter response to the government's motion in limine, dated January 6, 2026 (ECF Dkt. No. 331), argues that photographs of him with large amounts of cash are irrelevant and unfairly prejudicial. The court denied Shaw's motion to preclude this evidence. For the same reasons, the court should also deny Chambers' motion. Much like Shaw, Chambers is charged with committing a significant amount of wire fraud and identity theft. This evidence is probative of his commission of those crimes and witnesses will provide further contexts to those photographs.

b. <u>Evidence of Grave Desecration</u>

The defense seeks to preclude the government from introducing photographs and videos of Vazquez and other members of the Enterprise at the grave of Joecephus Vanable, also known as "Scooter," mocking his death by desecrating his grave. This evidence is highly probative and admissible.

As an initial matter, Defendant Vazquez is charged with the November 16, 2016 murder of Vanable. (<u>See</u> Count One, Racketeering Act Two and Counts Three and Four.) Specifically, Vazquez, together with another Crip, (hereafter referred to as Individual 1) shot and killed Vanable because Vanable was allegedly a member of an opposing gang. Over the next several years, Vazquez and other members of the Enterprise routinely mocked their rivals about this murder of a rival (and others), including by making and distributing videos where they desecrated Vanable's grave.

Vazquez's desecration of Vanable's grave in the years that followed his murder of Vanable is highly probative of his intent, motive and consciousness of guilt in committing the November 16, 2016 murder. This conduct demonstrates that Vazquez had no remorse for his role in Vanable's death and supports the argument that his murder of Vanable was intentional and done with the motive of killing a rival gang member.

Similarly, evidence of other Enterprise members desecrating Vanable's grave and celebrating his death is direct evidence of the Enterprise's culture and goals of killing rival gang members. The fact that many of these videos continued for years after the murder demonstrates the Enterprise's continued membership and approval of the murder, as well as its continued desire to target and kill rival gang members. These videos complete the narrative that the Vanable murder was not an isolated act, but part of a continued pattern of violence and intimidation by the Enterprise. In short, these videos are evidence of the core principals of the criminal Enterprise and are admissible.

c. <u>Rap Videos</u>

The defense also seeks to preclude the government from introducing several rap videos. During the course of its investigation, the government found multiple dozens of videos where members of the Enterprise rap about killing and assaulting rival gang members, and

routinely displayed guns and made gang signs.[4]  They also provide references to specific crimes committed by the defendants and other members of the Enterprise.  These videos are admissible as direct evidence, because in addition to discussion of actual crimes, the videos also assist in establishing association or membership in the enterprise and tend to corroborate the testimony of witnesses due to their great specificity about criminal conduct, membership or association with the enterprise, or manner in which crimes were committed.

It is well settled in the Second Circuit that music lyrics are admissible "where they are relevant and their probative value is not substantially outweighed by the danger of unfair prejudice."  United States v. Pierce, 785 F.3d 832, 841 (2d Cir. 2015).  Indeed, the Second Circuit has routinely approved the admission of music lyrics where, as here, the lyrics establish the existence of, and a defendant's participation in, a charged racketeering enterprise.  See id. at 841 (holding that music videos were properly admitted under Rule 403 where the government "proffered the rap video to show [the defendant's] animosity toward the [rival gang], as well as his association with" the enterprise); see also United States v. Herron, 762 F. App'x 25, 30 (2d. Cir. 2019 (rap videos properly admitted where "used to establish the existence of, and [the defendant's] participation in, the alleged RICO enterprise"); United States v. Barrett, 750 F. App'x 19, 22 (2d. Cir. 2018) (music videos admissible to show association with co-conspirators and use of vehicle used in charged crimes).

Consistent with Second Circuit law, courts in this District have admitted rap lyrics and music videos evidencing the existence, means and methods of racketeering enterprises.  See United States v. Ayers, No. 20-CR-239 (BMC), 2024 WL 1158686, at *7 (E.D.N.Y. Mar. 18, 2024) (admitting lyrics in a racketeering case where they allude to a specific criminal motive tied to one of the allegations in the case, namely to kill a rival, and excluding lyrics that were too general or amounted to "vapid posturing"); cf. United States v. Jordan, No. 20-CR-305 (LDH), 2024 WL 343970, at *4 (E.D.N.Y. Jan. 30, 2024), (holding that the relevance of rap lyrics as trial evidence depends on the existence of a specific factual nexus between the content of rap music and the crimes alleged, and excluding generalized rap lyrics in a non-racketeering context); see Carpenter, 372 F.Supp3d 74 (E.D.N.Y 2019), affirmed, 21-837, (2d Cir. 2022)(Summary Order) (holding that rap videos that refer to a specific act or motive that can be tied back to the alleged crime can be highly probative evidence.)

Rap lyrics and videos are also admissible where they establish the defendant's motive to participate in the charged conduct, Pierce, 785 F.3d at 840-41, or where they contain admissions by the defendant to crimes alleged in the indictment.

Here, the videos the government seeks to introduce 1) contain references and admissions by the defendants and Enterprise members about specific crimes charged in the indictment; 2) demonstrate the existence of the Enterprise; 3) highlight the relationships between members of the enterprise, including displaying government witnesses with other members of the

---

[4] The government has culled the many dozens of videos down to approximately 10-12 videos.  At trial, the government does not anticipate using all of the videos, however, that will depend largely on how the defendants contest certain issues at trial.

enterprise, thereby corroborating the witness's testimony; and 4) demonstrate how the Enterprise used videos to taunt rivals.

The probative value of these videos is extremely high. As the court is aware, the government must prove not only that these specific crimes occurred, but that the defendants committed these crimes in furtherance of the Enterprise. These rap videos, in which the defendants and other members of the Enterprise admit their involvement in specific crimes provide direct evidence of the defendants' and the Enterprise's role in the violence. Furthermore, the government witnesses will explain how making rap videos, and rapping about specific violent acts that one did, increased one's status within the Enterprise.

Finally, each of the defendants is charged with murder and other violent crimes. As such, a rap video about shooting at rival opposition members does not involve conduct more inflammatory than the charged crimes, furthering demonstrating that this evidence is admissible under Rule 403.

IV.    Conclusion

For the reasons set forth above, the government respectfully requests that the Court deny the defendants' motion to preclude the challenged evidence in its entirety, as such evidence is extremely relevant, highly probative and in no way unfairly prejudicial. Further, the defendants' objections to a lack of foundation and the evidence being cumulative are premature at this stage.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:      /s/
Michael R. Maffei
Andrew P. Wenzel
Kaitlin C. McTague
Assistant U.S. Attorneys
(631) 715-7890

cc:    Clerk of the Court (JMA) (by ECF)
Xavier Donaldson, Esq. (by ECF and email)
Steve Zissou, Esq. (by ECF and email)
Glenn Obedin, Esq. (by ECF and email)