# Steve Zissou & Associates

42-40 Bell Boulevard | Suite 302 | Bayside | New York | 11361 | 718.279.4500 | stevezissou@stevezissouesq.com

February 5, 2026

**BY ECF**

The Honorable Joan M. Azrack
United States District Court
100 Federal Plaza
Central Islip, New York 11722

      Re:    *United States of America v. Akeem Chambers*, Case No. 23 Cr. 157 (JMA)

Your Honor,

I write on behalf of my client, Akeem Chambers, joined by Glenn Obedin and Xavier Donaldson, counsel, respectively, for Jonathan Vasquez and Jerell Shaw.

This letter constitutes a third motion in limine, supplementing our motions dated January 21 and 22, 2026. Pursuant to Federal Rules of Evidence 401, 402, 403, and 901, we respectfully move to exclude an additional exhibit identified by the Government on February 4, 2026, namely Exhibit 817, a music video of a rap song titled "R.I.C.O. Story," attributed to Luca Da YK, produced by the Government after the initial motions in limine were filed.

This submission supplements our motions dated January 20, 2026, and January 22, 2026, and is submitted on the same grounds: the exhibit is unduly prejudicial, lacks probative value sufficient to justify its inflammatory impact, and risks transforming this trial into a referendum on rap music rather than the charged offenses.

## Legal Standard

As set forth in our prior motions, under Federal Rule of Evidence 403, the Court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403. "Unfair prejudice" means "an undue tendency to suggest decision on an improper basis," commonly, though not necessarily, an emotional one. *See, e.g., Old Chief v. United States*, 519 U.S. 172, 180 (1997). In RICO cases, the Government's burden to prove the existence of an enterprise does not give it carte blanche to introduce highly inflammatory evidence of other crimes merely because they bear some tangential relationship to the charged conspiracy. *See, e.g., United States v. Sampson*, 385 F.3d 183, 192 (2d Cir. 2004).

## Exhibit 817 Should Be Excluded

### A.  The Lyrics Contain No Admissions of Criminal Conduct

Government Exhibit 817 is a professional-looking music video titled "R.I.C.O. Story." It is attributed to "Luca Da YK" and contains photographs of Mr. Chambers. A close reading of the lyrics provided by the Government reveals that they contain no confession to any specific criminal act, no admission of participation in any charged offense, and no statement that could fairly be characterized as inculpatory.

The song is, in its entirety, a lament. It is structured as a direct address to an unnamed individual who has cooperated with the Government. The narrator expresses disbelief ("When n****s told me that you told I'm like stop lyin'"), grief ("I've been crying if I say I'm not depressed I'll be lying"), and a sense of personal betrayal ("Forever brothers to the end / Never folding never bend / How the fuck we in the feds"). The dominant emotional register is mourning—mourning a friendship, mourning a sense of loyalty, mourning the narrator's own naïveté.

The single line the Government is most likely to point to as an admission—"you who brought me on them drills"—is not inculpatory. It attributes initiative and agency to the cooperator, not to the narrator. The word "drills" is common slang across hip-hop that does not require a literal interpretation. Moreover, even if taken literally, the line would tend to *undermine* the Government's theory that Mr. Chambers was the organizer and leader of violent activity, by attributing the instigation of such activity to one of its own cooperating witnesses.

The line "I still hope you know I don't lack cause now we gotta send them missiles" is aggressive in tone but ambiguous in meaning. Ambiguous evidence that tends to cause significant confusion should be excluded under Rule 403. In hip-hop, "missiles" commonly refers to diss tracks or verbal attacks, not literal weapons. The line is embedded in a passage that is otherwise about crying, depression, and emotional devastation—a context that undercuts any reading of it as a genuine operational threat. Similarly, "boy even when you die might drop a tear but fuck a tissue" is performative bravado that simultaneously concedes the narrator would grieve.

### B.  The Lyrics Are Inflammatory Artistic Expression, Not Evidence of Criminal Conduct

Courts have increasingly recognized the danger of admitting rap lyrics as evidence of criminal conduct. *See United States v. Herron*, Case No. 10 Cr. 615 (NGG), 2014 U.S. Dist. LEXIS 63872, 2014 WL 1871909, at *4 (E.D.N.Y. May 8, 2014). As we noted in our prior motions, research has demonstrated that people shown violent lyrics are more likely to find them literal, offensive, and in need of regulation when told the lyrics are from a rap song rather than from another genre. *See* Adam Dunbar, Charis E. Kubrin & Nicholas Scurich, *The Threatening Nature of "Rap" Music*, 22 Psych., Pub. Pol'y & L. 280 (2016).

*United States of America v. Akeem Chambers*, Case No. 23 Cr. 157 (JMA)
February 5, 2026

Exhibit 817 presents *precisely* the danger the Dunbar study identifies. The song's title alone—"R.I.C.O. Story"—invites the jury to conflate an artistic reference with the legal charge. Jurors who see the word "RICO" on a handwritten lyric sheet will inevitably associate the artistic work with the statutory offense, drawing an inferential leap that is both legally impermissible and factually unwarranted. The title is a reference to the experience of being caught up in a federal investigation—a common subject in contemporary rap—not an acknowledgment of guilt under 18 U.S.C. § 1962.

### C.  The Exhibit Is Cumulative of Other Evidence

As detailed in our motions of January 20 and January 22, 2026, the Government has already identified an extraordinary volume of rap music, lyrics, and music videos on its exhibit list. These include Exhibits 121, 125, 234 (numerous files), 251, 252, 357–365, 367–368, 377, 390, 615–625, 3004, and numerous additional exhibits within the 431 and 449 series. To the extent the Government seeks to prove gang membership or affiliation through musical expression, it has already designated far more material than is necessary. Exhibit 817 is cumulative of this already excessive body of exhibits. *See* Fed. R. Evid. 403.

### D.  To the Extent the Lyrics Are Probative, They Undermine the Government's Theory

The Government's theory of the case portrays Mr. Chambers as a calculating leader who organized violence, elevated members, and maintained operational control over the KTK enterprise. The emotional content of Exhibit 817 is fundamentally inconsistent with this portrayal. An enterprise leader anticipates betrayal and plans for it. The narrator of "R.I.C.O. Story" is blindsided by it. The song depicts a young man who is missing meals, questioning himself, crying, and struggling to process the collapse of friendships he believed were permanent. This is not the voice of a gang leader reacting to a subordinate's defection; it is the voice of a young man reacting to a friend's betrayal.

Moreover, the song's references to cooperating witnesses—particularly the line attributing violent initiative to a cooperator ("you who brought me on them drills")—would, if admitted, tend to support the defense's position that the cooperating witnesses have minimized their own roles while inflating Mr. Chambers's. If the Government introduces this exhibit, it risks providing the defense with material that directly contradicts its own witnesses' testimony. This paradox underscores the exhibit's minimal probative value: the Government cannot simultaneously argue that the lyrics are reliable evidence of Mr. Chambers's guilt and ignore the lyrics' attribution of agency to its own cooperators.

### Conclusion

The introduction of Exhibit 817 would invite the jury to convict Mr. Chambers based on artistic expression rather than evidence of actual criminal conduct. The lyrics contain no admissions, are cumulative of an already excessive volume of similar material, and pose a severe risk of unfair prejudice. The song's title alone threatens to collapse the distinction

Page **4** of **4**
*United States of America v. Akeem Chambers*, Case No. 23 Cr. 157 (JMA)
February 5, 2026

between art and law in the minds of the jurors. Whatever marginal probative value the exhibit may possess is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. *See* Fed. R. Evid. 403; *Old Chief*, 519 U.S. at 180; *Sampson*, 385 F.3d at 192.

Mr. Chambers respectfully requests that the Court exclude Exhibit 817 in its entirety, or in the alternative, conduct a hearing to determine its admissibility prior to trial.

Thank you very much for your consideration in this matter.

Respectfully submitted,

Steve Zissou, Esq.
Glenn Obedin, Esq.
Xavier Donaldson, Esq.

SZ/jc