

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MRM/APW/KCM
F. #2020R00784

*610 Federal Plaza*
*Central Islip, New York 11722*

February 20, 2026

<u>By ECF</u>

The Honorable Joan M. Azrack
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

       Re:    United States v. Akeem Chambers, <u>et</u> <u>al</u>.
               <u>Docket No. 23-CR-157 (S-3) (JMA)</u>

Dear Judge Azrack:

The government respectfully submits this letter in opposition to the defendant's motion (ECF No. 443 ("Def. Mot.")) to preclude the expert testimony of Walter Collier. As discussed herein, the motion should be denied in its entirety.

I.      <u>The Standard for Expert Testimony</u>

Federal Rule of Evidence 702 "allows broad discretion to a district court to admit expert testimony 'in the form of an opinion or otherwise' when, in the district court's judgment, it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" <u>United States v. Feliciano</u>, 223 F.3d 102, 120 (2d Cir. 2000) (quoting Fed. R. Evid. 702). "In addition, the testimony must meet the requirement of relevance" articulated in Federal Rule of Evidence 401—that the testimony "has any tendency to make a fact more or less probable than it would be without the evidence." <u>United States v. Rivera</u>, 971 F.2d 876, 887 (2d Cir. 1992); Fed. R. Evid. 401. Since the testimony of Walter Collier is relevant and will assist the jury to understand the evidence, their testimony should be admitted in full. Further, a trial court has considerable latitude in deciding whether or when special proceedings are needed to investigate challenged reliability of proposed expert testimony. See <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 152-53 (1999). Pretrial evidentiary hearings are particularly unnecessary when expert testimony is based on well-established principles, as is the case here, and where the witness has been qualified as an expert in over 180 cases. See <u>United States v. Williams</u>, 506 F.3d 151, 160 (2d Cir. 2007) (finding that the "formality of a separate hearing was not required to satisfy <u>Daubert</u>" where, among other things, the district court considered the proposed expert's experience,

including "her prior expert testimony on between 20 and 30 occasions."). As such, a <u>Daubert</u> hearing is unnecessary here.[1]

II.    The Expert Testimony of Walter Collier is Admissible

As set forth by letter dated October 3, 2025, and in the expert disclosure letter and affidavit provided on December 23, 2025, attached hereto as Exhibits 1 and 2, respectively, the government plans to elicit testimony from Mr. Collier about how ShotSpotter technology works and the ShotSpotter technology response to certain shooting incidents relevant to the charges at trial.[2] Specifically, Mr. Collier is expected to that: (a) on September 27, 2016 at 9:20 p.m., five gunshots were captured via ShotSpotter technology in the vicinity of 9 Martin Luther King Drive, Hempstead, New York (report marked as government exhibit "GX" 1005); (b) on November 19, 2016 at 8:35 p.m., eight gunshots were captured ShotSpotter technology in the vicinity of 266 Washington Street, Hempstead, New York (report GX 1006); (c) on August 1, 2020 at 12:06 a.m., 10 gunshots were captured via ShotSpotter technology in the vicinity of 61 Oakland Street, Hempstead, New York (report GX 1012); (d) on December 16, 2020 at 12:31 p.m., a total on 17 gunshots were captured via ShotSpotter technology in the vicinity of 54 and 69 Windsor Parkway, Hempstead, New York (report GX 1013); (e) on December 19, 2020 at 2:40 a.m., 13 gunshots were captured via ShotSpotter technology in the vicinity of 445 South Main Street, Freeport, New York (report GX 1015); (f) on May 19, 2021 at 12:26 a.m., four gunshots were captured via ShotSpotter technology in the vicinity of 100 Terrace Avenue, Hempstead, New York (report GX 1017); (g) on May 20, 2021 at 12:20 a.m., a total of 12 gunshots were captured via ShotSpotter technology in the vicinity of 1409 O Street and 706 Donovan Street, Elmont, New York (report GX 1018); (h) on June 29, 2021 at 3:28 a.m., 17 gunshots were captured via ShotSpotter technology in the vicinity of 64 Robinwood Avenue, Hempstead, New York (report GX 1019); (i) on February 20, 2022 at 9:12 p.m., 10 gunshots were captured via ShotSpotter technology in the vicinity of 11 Burnett Street, Hempstead, New York (report GX 1021); and (i) on March 10, 2022 at 7:10 p.m., 11 gunshots were captured by ShotSpotter technology in the vicinity of 1092 Willmohr Street, Brooklyn, New York (report GX

---

[1] To the extent the defense claims the Government's expert notice is insufficient, he is wrong. The defense alleges that the reports provided in the government's expert notice (as provided for in Rule 16(a)(1)(G)(iii)) do not contain a "complete statement of all opinions." Def.Mot. at 2. The defense cites to the report which is now marked as GX 1023. What the defense fails to acknowledge that the reports provided, like GX 1023 contain the exact information the defense allege they do not. For example, Figure 3.0 contains the results of manual analysis, and the About ShotSpotter section of the report includes accuracy rates, margin for error, and factors that may impact accuracy. Further, the methodology of the analysis is contained in Figure 4.0, explaining the multilateration plotting of locations. Because the government's expert notice and attached reports contain the exact types of information the defense claims it lacks, the defendants' claim of insufficient notice is meritless.

[2] While the government's disclosure provided notice related to fifteen incidents analyzed by Mr. Collier, at present, the government only plans on eliciting testimony related to ten of the incidents.

1023).  Mr. Collier's curriculum vitae, which was provided to the defense on December 23, 2025, is attached as Exhibit 3.

A Court must consider the "totality of a witness's background" when evaluating the witness's qualifications as an expert.  See Rosco, Inc. v. Mirror Lite Co., 506 F. Supp. 2d 137, 145 (E.D.N.Y. 2007).  As laid out in Mr. Collier's curriculum vitae, Mr. Collier has worked at SoundThinking, Inc. (previously ShotSpotter, Inc.) for over eleven years.  During that time, he has become versed in the technologies and methodologies employed by the ShotSpotter Suite of tools to reliably determine the location of gunfire events.  He has provided expert testimony related to the ShotSpotter technology and specific incidents captured by said technology in over 180 cases, including cases in both the Eastern and Southern Districts of New York.  See United States v. Pena, 2024 WL 4132379, at *1, 21-CR-176 (AMD) (E.D.N.Y.); United States v. Agoro, et al., 20-CR-293 (WFK) (E.D.N.Y.); United States v. Joseph, 20-CR-603 (PKC) (S.D.N.Y.).

Based on Mr. Collier's extensive training and qualifications, the government intends to call Mr. Collier as an expert in ShotSpotter technology.  He will testify to the technology, its components, and the data captured by the technology.  Mr. Collier does not need to be a physics expert to testify as an expert regarding the ShotSpotter technology and the type of data it collects.  See, e.g., Rosco, 506 F. Supp. 2d at 144-46 (admitting expert testimony of an individual with a general knowledge of mathematics to testify regarding method of measuring radius of curvature of a mirror even though the witness lacked knowledge regarding the manufacturing or design tolerances for mirrors).  The totality of Mr. Collier's background and experience in ShotSpotter technology is sufficient to qualify him as an expert in exactly that— ShotSpotter technology.

In addition to contesting Mr. Collier's qualifications, the defendant contests the admissibility of the ShotSpotter technology, claiming that the technology is unreliable, alleging it has not been independently validated and its accuracy rates are self-reported.  Def. Mot. 3-4.  This argument is also flawed.  Indeed, the facts of this case demonstrate the accuracy of the ShotSpotter technology.  In each of the ten incidents about which the government intends to offer Mr. Collier's testimony, law enforcement responded to the scene and recovered ballistics evidence consistent with the conclusions reached by Mr. Collier. This evidence corroborates the accuracy and reliability of the ShotSpotter system with respect to the evidence the government intends to admit in its case in chief. In some of the above instances, there is video of the shooting incidents taking place, which further corroborates the accuracy and reliability of ShotSpotter.

Whether to hold a separate Daubert hearing in advance of admitting expert testimony is within the trial court's discretion.  See Williams, 506 F.3d at 161.  Accordingly, to the extent the Court seeks to examine Mr. Collier's expertise in ShotSpotter technology, the Court should order a Daubert hearing, rather than summarily preclude Mr. Collier's testimony, as the defendant argues.  The government submits, however, that a Daubert hearing is not necessary as to Mr. Collier's testimony.  As described above, Mr. Collier has significant expertise in the operation of ShotSpotter technology, including how the ShotSpotter system works and the interpretation of forensic reports generated by ShotSpotter, and has been qualified as an expert in ShotSpotter technology in over 180 cases.  Moreover, in light of the substantial other evidence that the shooting occurred at the time and place recorded by ShotSpotter, it is unlikely that any of Mr. Collier's testimony will be seriously disputed.

3

Indeed, recently another court in this District upheld the admission of the testimony of a ShotSpotter expert in the face of challenges nearly identical to those raised by the defense in the instant motion.  In United States v. Pena, the district court permitted Walter Collier, the same expert witness noticed by the government in this case, to testify as an expert about ShotSpotter technology pursuant to FRE 702.  Pena, 2024 WL 4132379, at *1.  At the time Judge Donnelly permitted Mr. Collier to testify as an expert, he had testified as an expert in over 130 cases.  Since that time, Mr. Collier has testified as an expert in over forty additional matters in both state and federal courts.  Further, in Pena, Judge Donnelly noted, as here, that the defense did not actually challenge the "underlying GPS triangulation methodology which ShotSpotter location is based – a methodology that other courts have found reliable under Daubert and equivalent state evidentiary rules."  Pena, 2024 WL 4132379, at *2 (citations omitted).  Because there was no legitimate question raised about the methodology in Pena, the district court declined to hold a Daubert hearing.  Id.

For the reasons stated above, the Court should allow Mr. Collier to testify as an expert in the field of ShotSpotter technology and a Daubert hearing is not necessary.  Put another way, the defendants' motion should be denied in its entirety.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    /s/ _____
Michael R. Maffei
Andrew P. Wenzel
Kaitlin C. McTague
Assistant U.S. Attorneys
(631) 715-7900

cc:    Clerk of Court (JMA) (by E-Mail and ECF)
Defense Counsel (by E-Mail and ECF)

4